CASE 20.—ACTION BY OFFUTT & BLACKBURN AGAINST WILLIAM J. CARLEY.—January 6. 1910.

## Carley v. Offutt & Blackburn

Appeal from Scott Circuit Court.

R. L. STOUT, Circuit Judge.

Judgment for plaintiffs, defendant appeals.—Affirmed.

1.  Warehousemen—Duty to Protect Stored Property.—Warehousemen are not insurers, and are only bound to use ordinary care to protect property committed to them.
2.  Warehousemen—Duty to Receive Infected Grain.—Warehousemen cannot be compelled to receive into their elevator wheat infected with weevil, and when their elevator becomes so infected they may close it for disinfection, whether they are public or private warehousemen, and to such end may require all wheat to be removed by the owners after reasonable notice to do so; and, an owner of wheat having failed to remove it after such notice, the warehousemen may remove it, and add the reasonable cost of doing so to their storage charges, and are not required to keep the elevator open indefinitely for such person after all grain except his has been removed.
3.  Warehousemen—Neglect of Stored Property—Liability.—Ky. St. Sec. 4794 (Russell's St. Sec. 2563), providing that any warehouseman guilty of neglect, the effect of which is to depreciate property stored in a warehouse under his control,

shall be held responsible as at common law, only contemplates a liability for neglect in dealing with grain deposited.

4.   Warehousemen—Construction of Statute.—The provision of Ky. St. Sec. 4794 (Russel's St. Sec. 2563), requiring notice in a. daily newspaper upon a warehouseman's discovery that grain in his elevator is becoming out of condition, only applies to grain that is not stored in a separate bin; the purpose of the advertisement being to reach the owners of the grain, and the owner of grain stored in a separate bin being known to the warehouseman.

W. S. KELLEY and SAMUEL M. WILSON for appellant.

B. M. LEE for appellee.

OPINION OF THE COURT BY JUDGE HOBSON—Affirming.

Offutt & Blackburn own and operate a wheat elevator at Georgetown.   William J. Carley owns and operates a flour mill there.  On July 20, 1906, he stored with them 5,400 bushels of wheat in a special bin, by which it was kept separate from other wheat, and they executed to him the following writing:

Georgetown,.Ky., July 20, 1906.
"Received in store from William Carley fifty-four hundred bushels wheat, in special bin, which we will deliver to said William Carley, or order, upon presentation of this receipt properly indorsed, on payment of charges.  This property is held for the owner in store at his risk as to fire or depreciation from that cause.

"5,400 bushels.          OFFUTT & BLACKBURN.

"Agreed rate of charges: One month or fraction thereof, 1 cent; 3 months, per month per bushel, 1 cent; after 3 months or fraction thereof, per mo., ½ cent."

They had in the elevator a large quantity of wheat of their own. In the early spring of 1907 they discovered weevil in some of their wheat. The usual way of getting weevil out of wheat is to run it through a fan and blow them out; but when this is done they get into the building and are liable to get into other wheat in it. So Offutt & Blackburn at once notified Carley that they had discovered weevil in their wheat, and requested him to take his wheat out of the elevator before it became infected. It was customary to move all of the wheat in the elevator at stated times, and they desired to give him the opportunity to take his wheat out before it was moved again, so that there would be less danger of loss. He had the same trouble at his mill. It was a bad year for weevil, and he declined to take the wheat out, insisting that they should keep it, as wheat was then down and he could not sell it for the price he asked. A month or so after this they found that the weevil had gotten into his wheat and so notified him. He then requested them to bring him a sample of his wheat, which was done, and after he looked at the sample he still refused to take his wheat out, saying it was not hurt much. They did the best they could with the wheat, and, he still refusing to move it, they finally ran it out into a warehouse, and brought this suit against him, asking the court to make the proper orders for their protection. An agreement was then made by which the wheat was sold, and the rights of the parties were to be litigated in the action. There was a loss of something over $2,000 on the wheat; and by his answer, which he made a counterclaim, Carley sought to hold Offutt

& Blackburn liable for the injury done to the wheat by the weevil.

There was some conflict in the testimony on the final trial. The evidence for Carley tended to show that Offutt & Blackburn did not give him notice of the condition of the wheat, and that they did not exercise ordinary care in taking care of it; but the weight of the evidence shows the facts as above stated. The court instructed the jury in substance: (1) That they should find for the plaintiffs the amount of storage due them under the contract, and if it was necessary to remove the wheat from the elevator, and they gave Carley notice to remove his wheat, and he refused to remove it in a reasonable time, the jury should also allow Offutt & Blackburn the reasonable expenses they incurred in removing the wheat; (2) that if Offutt & Blackburn negligently stored or handled the wheat, so that it became infected with weevil, they should find for Carley on his counterclaim the difference between the market value of the wheat as delivered to them and as injured by the weevil; (3) that they should offset their findings under 1 and 2, and find a verdict for the party who was entitled to the difference; (4) that the plaintiffs were bound to use such care as an ordinarily careful and prudent person engaged in the business of warehouseman would use under the circumstances, and that the failure to use such care was negligence. Under these instructions the jury found for Offutt & Blackburn, and Carley appeals.

It is insisted for appellant that Offutt & Black burn were public warehousemen; that as such they were bound to receive all grain that was tendered them, and that, if Carley had taken his wheat out of

the elevator, he could have required them immediate-
ly to receive it back; and that, therefore, he was
under no obligation to take the wheat out of the ele-
vator when notified to do so. It is insisted for Offutt
& Blackburn that they were private warehousemen;
that by the writen contract they agreed to put Car-
ley's wheat in a special bin and keep it at so much a
month, and that, therefore, they could terminate the
arrangement at any time on a month's notice. We do
not find it necessary to determine whether Offutt &
Blackburn were public or private warehousemen. In
either event they were not insurers. They were only
bound to use ordinary care to protect the property
committed to them. They were not responsible for an
injury to the property which could not be guarded
against by ordinary care. Mitchell v. Frazier, 9
Bush, 3; 30 Am. & Eng. Encyc. 46, and cases cited;
American Brewing Ass'n v. Talbot, 141 Mo. 674, 42
S. W. 679, 64 Am. St. Rep. 538. Thus it has been
held that, if the contents of barrels stored in a ware-
house has been diminished by leakage, the warehouse
man is not liable, unless it is shown that the loss was
due to his negligence (Taussig v. Bode, 134 Cal. 260,
66 Pac. 259, 54 L. R. A. 774, 86 Am. St. Rep. 250),
and that he is not liable for injury from rats, when
he has taken the proper precaution to prevent it
(Taylor v. Secrist, 2 Disney, 299).

Carley's wheat was not mixed with other wheat
in the elevator. It was kept separate. When it was
discovered that weevil had made its appearance in
the elevator, it was incumbent on the owners to use
ordinary care to eradicate the trouble and to prevent
its being communicated to Carley's wheat; but when
he allowed his wheat to remain in the elevator after
they had used all the precautions they could and

notified him of the trouble, thus giving him an opportunity to remove his wheat from the danger, he can not complain unless they after this failed to use such care for its protection as may be expected of a person of ordinary prudence under the circumstances. If he had then withdrawn his wheat from the elevator, the proof is clear that he would have sustained no substantial loss. The loss which followed was due to his refusal to remove his wheat, insisting that he had the right to allow it to remain and require Offutt & Blackburn to furnish him as good wheat when demanded as he had put in the elevator. The written contract which they made with him simply bound them to keep the wheat in store in a special bin and deliver it to him on demand.

The law added to the written contract the implied undertaking that they would use ordinary care in keeping it, and deliver it to him in such a condition as it would be if kept with ordinary care. The law did not make them insurers that the wheat would remain in the condition in which it was delivered to them, or that no weevil or other vermin would get into it. There is no question in this case about a limitation of their common-law liability. Their common-law liability was simply to use ordinary care in keeping the wheat. If Carley had withdrawn his wheat from the elevator after it became infected with weevil and before it was injured, he could not have required them to receive it back from him, for he could not have required them to receive into the elevator infected wheat; and when their elevator became infected with weevil, they had the right to close it, whether they were public or private warehousemen, so as to disinfect it, for in its infected condition it was not fit to be used for the purpose for which it was intended.

To this end they had the right to require all wheat in it to be removed by the owners after reasonable notice to do so, and when Carley failed to remove his wheat they had the right to remove it and add the reasonable cost of doing so to their storage charges. They could not properly put other wheat into it when thus infected; and when all the wheat except his was removed, Carley could not require them to keep the elevator open for him indefinitely. The common law attaches no such liability to a warehouseman's contract. Like other contracts for an indefinite time, the contract of a warehouseman may be terminated by him on reasonable notice, and a public warehouseman, no less than a private one, may close his warehouse to all.

Section 4794, Ky. St., only contemplates a liability for neglect on the part of the warehouseman in cases like this. Among other things that section provides: "Any warehouseman, guilty of any act of neglect the effect of which is to depreciate property stored in a warehouse under his control, shall be held responsible as at common law." The previous part of the section, as to notice in a daily paper if the grain becomes out of condition, only applies to grain that is not stored in a separate bin. The purpose of the advertisement is to reach the owners of the grain; but when the grain is stored in a separate bin, and the owner is known, as in this case, this part of the section has no application.

There was no substantial error in the admission of evidence, the case was fairly submitted to the jury by the instructions, and the great weight of the tes-

timony sustains their verdict.   On the whole case, we see no reason for disturbing the judgment.

Judgment affirmed.