[No. 8057.]

## TASHIMA v. THE PEOPLE.

1. APPEAL AND ERROR—*Harmless Error.* A party will not be heard to complain of the refusal of an instruction, in lieu of which one more favorable to him was given. (102)

The withdrawal from the jury of one count of an information, is harmless. (104)

2. ——*Verdict on Conflicting Evidence,* controls in the Court of Review. (103)

3. BILL OF EXCEPTIONS—*When Necessary.* Error assigned upon an instruction to which no exception appears in the record will not be considered. *Semble.* An exception to this rule may be made to avoid a miscarriage of justice. (102)

4. ——*Requisites of.* Complaint of improper remarks in the argument of counsel will not be considered where it is impossible to determine from the bill of exceptions what the exact language was, or the connection in which it was used. (102)

5. BAILMENT—*Defined.* Bailment is the delivery of personal property by one person to another in trust for a specific purpose, with a contract, express or implied, that the trust shall be faithfully executed and the property returned or duly accounted for when the special purpose is accomplished, or kept until the bailor reclaims it.

Delivery of a certificate of deposit, by payee to another, merely that the person receiving it shall cause it to be renewed, *held* a bailment within Rev. Stat. Sec. 1688.* (104)

*Error to Denver District Court.*—Hon. CHARLES C. BUTLER, Judge.

Mr. JOHN HORNE CHILES, for plaintiff in error.

Hon. FRED FARRAR, Attorney General, Mr. FRANK C. WEST, Assistant Attorney General, for The People.

Mr. JUSTICE GARRIGUES delivered the opinion of the court:

Complaining witness, Yanari, was a patron of de-

fendant's boarding house. He testified that in December, 1911, or January, 1912, he was the owner of and had in his possession, a certificate of deposit, about to mature, issued to him by a San Francisco bank; that on account of his going away with a railroad gang to work, he was unable to attend to its renewal, and endorsed it and delivered it to the defendant with instructions to forward it to the bank for renewal; that defendant accepted the certificate for this purpose, and Yanari never saw it again, or received the renewal or the proceeds; that although he made repeated attempts, he was unable thereafter, before the commencement of the criminal action, to see defendant.

Defendant admitted that he received the certificate, deposited it to his credit in a bank, and used the proceeds in his business; but claims he borrowed the money; that Yanari in compliance with his request for a loan, gave him the certificate and in addition one hundred dollars in cash, for which he made, executed and delivered his promissory note to Yanari, which defendant produced on the trial, a translation of which is as follows:

"Memo.

Dec. 20, 1911.

$300.00

Remarks.

$200.00 Specie Bank certificate, Y402.01.

$100.00 Amount left on hand of Mrs. T. Horikuwa.

Term—April 20, 1912.

The above amount surely borrowed.

Signed by C. K. Tashima

S. Hiro.

To Mr. K. Yanari."

When this note became due, defendant, according to his testimony being unable to pay it, gave Yanari a new note for $209.00 the balance due, $100.00 of the amount,

as he claimed, having been paid. This purported renewal note was introduced by the people, its substance being incorporated in the record as follows:

"Date, April·20, 1912. Signed by S. Hiro and K. Tashima, certificate of deposit $209. I received the same for safe custody for K. Yanari, and this is payable whenever after September of this year."

Yanari denied that he loaned the money represented by the certificate, or any money to the defendant, and testified that he never saw the first note nor heard of its existence until it was produced at the trial; that the certificate was delivered to defendant for the specific purpose of having it renewed, and that only. As to the renewal note, he said defendant's partner Hiro brought it to him and requested him to accept it; but he declined to take it, whereupon Hiro forced it upon him by sticking it in the outside pocket of his coat and leaving him.

The jury found the defendant guilty of larceny as bailee and from the judgment of the court based upon the verdict, he brings the case here for review.

The errors which are relied upon by plaintiff in error for a reversal and which are discussed in the briefs, are as follows:

1. That the court refused to submit to the jury under proper instructions the theory of the defense that Tashima used the certificate of deposit under a claim of right.

2. That the court erred in giving an instruction as to the effect of the promissory note given after the conversion of the certificate.

3. Improper remarks of the district attorney in addressing the jury.

4. That the verdict is not sustained by the evidence.

5. That the verdict is contrary to law.

6. That the court erred in not submitting to the jury under proper instructions the question of whether

defendant was guilty, if at all, of common law larceny, or larceny as bailee. We will discuss these questions in this numerical order.

1. Defendant complains that the court refused an instruction upon his theory of the case, that the certificate was converted to his own use under a claim of right, without felonious intent. Upon this proposition defendant requested the court to give the following instruction:

"The jury are further instructed that if the accused believed that he had a right to put the property in question to his own use, and if the jury find that it was the understanding between the accused and the said K. Yanari that a mere debtor and creditor relationship should exist between them, and if the jury find that the said K. Yanari took the note of the accused in return for the said time certificate, then the jury should acquit the defendant."

The court refused to give this instruction, and gave the following:

## "VII.

"That to constitute the crime of larceny a felonious intention, that is an intention to steal, must always exist. And, under our statute, making the conversion of property to his own use by a bailee larceny, the crime is not made out by merely showing a conversion of the property to his own use by the bailee, but it must further appear that such conversion was with an intent to steal the same. The jury are instructed, that the taking or conversion of personal property which renders a person guilty of simple larceny, or of embezzlement, is a felonious taking or conversion, and before you can convict the defendant in this case you must be satisfied, from the evidence, beyond a reasonable doubt, that the property mentioned in the information, or some part of it, was

converted to his own use by the defendant, with an intention, at the time, to steal the same."

While it might have been well for the court to have given an instruction based upon the defense presented, still we believe that the question was sufficiently covered by the instruction given, which was more favorable to the defendant than the one refused. Had the jury believed the defendant's version of the transaction, that the money was borrowed upon an agreement between the parties, under the instruction given, they could not have found any intent to steal and undoubtedly would have acquitted the defendant. No other reasonable conclusion can be reached.

2. This assignment relates to one of the instructions given by the court. The record contains no objection or exception covering this proposition and under the well established rule of this court, we must decline to consider it. We do not say that we would not make an exception to the rule in a case where its enforcement would uphold a flagrant violation of the rules of law or a miscarriage of justice; but this is not such a case.

3. As to the remark of the district attorney in his argument to the jury, that the defendant was "guilty as hell," there is nothing in the bill of exceptions relating to this matter from which we can determine what the exact language was or in what connection it was used. There was no objection made to it at the time, and no exception saved. We are in no position to pass intelligently on the question and must refuse to consider it.

4. Plaintiff in error contends that the judgment is not sustained by the evidence. The testimony in the case is not entirely satisfactory. The witnesses for the most part were foreigners, unable to speak or understand our language, and their evidence was given through an interpreter who did not at all times succeed

in making the answers clear. On a careful examination of the whole record, however, we are unable to say that there is not sufficient evidence to sustain the verdict. It is undisputed that the certificate of deposit was left with the defendant and that he used it in his business. The only question was, whether the money it represented was loaned to him or whether he received it for the purpose of renewal only, and feloniously converted its proceeds to his own use. This was a question for the jury which resolved it against the defendant on conflicting evidence, and with its finding we cannot interfere.

5. Is the verdict contrary to law?

Plaintiff in error says that if he is guilty of anything, it is embezzlement and not of the crime of larceny as bailee. The two crimes are very similar in their nature. Our statute provides: "If any bailee, by finding or otherwise of any money, bank bill, or note, or goods or chattels, shall convert the same to his or her own use with an intent to steal the same, he shall be deemed guilty of larceny in the same manner as if the original taking had been felonious, and on conviction thereof shall be punished accordingly." R. S. 1908, § 1688. A construction of this statute necessarily involves the definition of the term bailment, and the determination of who is a bailee. The authorities are by no means harmonious upon the proposition. One line, upon which plaintiff in error relies, supporting the definition that a bailment includes contracts where the specific property is to be redelivered to the bailor; and the other defining the term as a delivery of a thing in trust for some specific object or purpose, and upon a contract express or implied to conform to the object or purpose of the trust. Without entering into a discussion of the many arguments for or against either of these varying views, it may be observed that the word bailment comes from the

French "Bailler," meaning to deliver; and in its ordinary signification which conforms to modern authorities, and is substantially correct, may be said to import the delivery of personal property by one person to another in trust for a specific purpose, with a contract express or implied, that the trust shall be faithfully executed and the property returned or duly accounted for when the special purpose is accomplished.—3 R. C. L. 72; *Carley v. Offut,* 136 Ky. 212, 124 S. W. 280, 26 L. R. A. (N. S.) 1114, 136 Am. St. 214.

We are of the opinion that in the case at bar, the transaction as testified to by the complaining witness was a bailment; that the defendant was a bailee, and that the wrongful conversion of the property by him, is covered by our statute on that subject.

6. In this assignment the defendant complains because the court withdrew from the consideration of the jury the third count of the information charging him with common law larceny, contending that it should have been left to the jury to say what, if any crime, he had committed. We are unable to see how the action of the court in this regard prejudiced the rights of plaintiff in error in any way. We should rather consider it an advantage to him, than otherwise, and must overrule this assignment.

Upon a careful consideration of the whole record, we cannot say that it contains any prejudicial error, and the judgment will therefore be affirmed.

*Affirmed.*

CHIEF JUSTICE MUSSER and Mr. JUSTICE SCOTT concur.

* Syllabus by GARRIGUES, J.