[Civ. No. 3527. Third Appellate District.—October 29, 1928.]

GEORGE H. ENGLAND, Respondent, v. LYON FIRE-PROOF STORAGE CO. (a Corporation), Appellant.

564

Howard S. Clewett for Appellant.

George S. Hupp and Ben F. Gray for Respondent.

THOMPSON (R. L.), J., *pro tem.*—This is an appeal from a judgment and verdict for $4,000 damages on account of the theft of goods while stored in the defendant's warehouse at Los Angeles. The defendant was engaged in warehouse business at that city. The plaintiff and his family were about to leave their residence in Los Angeles to travel abroad, and on December 10, 1920, he packed their household goods in various boxes and containers and hauled them to the warehouse of defendant for storage during their absence. These goods were received by the defendant and the packages were consecutively numbered from 1 to 57, inclusive, and listed upon duplicate warehouse receipts, one of which was retained by the defendant and the other was delivered to the plaintiff. A few days later other boxes and packages of household goods and effects were also delivered to the defendant. This second consignment included seven cases of whisky, the contents of which were made known to the defendant. These goods were also numbered and listed on the back of defendant's original warehouse receipt, but a duplicate of this last list was not given to the plaintiff. The entire consignment of goods was stored in a separate room in defendant's warehouse and the door to the room was securely locked. No other person's goods were placed in this same storeroom. Several employees of the defendant held pass-keys to all the rooms of the warehouse, including the room in which plaintiff's goods were stored. When the pass-keys became worn and failed to operate in the locks, new ones were procured and the old ones were carelessly thrown into the waste-baskets or rubbish. Upon other occasions liquor had been stolen from the warehouse, and once, another storeroom had been burglarized.

The president of the defendant corporation had been warned that a certain one of his employees was a bootlegger, and while the president admitted that he had secured a detective to investigate the charge, he retained this man in his employ.

Upon plaintiff's return after three years' absence he called upon the defendant to reclaim his property. On going to his storeroom the employee who accompanied him fumbled with the lock and complained about the difficulty of opening it. Upon unlocking and entering the storeroom, however, he found three boxes opened, empty, and the contents missing, including a number of valuable pictures, hand-painted china, porcelain and Dresden ware, bronze and ivory statues, bric-a-brac, rugs and laces of rare value, together with the entire stock of liquor. The liquor was stipulated to be worth $400. Suit was brought against the defendant for negligently suffering the theft of the goods, and a verdict of $4,000 was rendered against the defendant.

The defendant seeks a reversal of the judgment on the ground that (1) the boxes in question were received empty, and asserts that the theft never occurred; that (2) the judgment is not supported by the evidence, for the reason that there is a total lack of proof of negligence proximately contributing to the theft; that (3) the liability of the defendant was specifically limited by the provisions of section 1840 of the Civil Code and the language of the warehouse receipt to $25 per package, and that (4) the trial court erred in giving and refusing certain instructions.

Defendant's contentions that the boxes in question were empty when they were delivered for storage, and that the theft did not occur, are without merit. The plaintiff himself testified to the packing and specific contents of these boxes, each item of which is mentioned in the complaint. He accompanied the van which hauled them to the warehouse, and went with them to the sixth floor and saw them packed in the storeroom. Defendant's manager accepted and listed on the warehouse receipt each of these boxes. The liquor was first brought to the warehouse wrapped in heavy paper and without the necessary government permit for removal. The defendant refused to accept it for storage in this condition, and it was returned and repacked in one

of the boxes in question, and then brought back to the warehouse with the government permit, which was exhibited to the foreman. These three boxes, weighing about 200 pounds each, were then marked by the foreman numbers 62, 63, and 65, respectively, and were listed by him on the warehouse receipt in each instance as "Box & con." This clearly implies that the boxes, when received by the defendant, were not empty. Upon the contrary, the indorsement on the receipt is an acknowledgment of the existence of "contents" of some sort in the boxes. Plaintiff was present when the storeroom was first opened at the time when he went to reclaim his property, and immediately observed the broken and empty boxes and commented upon the theft to the employee. This furnishes ample evidence to support the loss of the goods.

■ In the absence of a specific agreement to the contrary, a bailee or proprietor of a general warehouse does not become an insurer of property against theft. All that is required of him is the exercise of ordinary care for the protection of the owner's property such as would be used by the owner himself under similar circumstances. ■ The question as to what constitutes reasonable care on the part of a bailee for hire depends largely upon the circumstances of the particular case and upon the value and character of the property entrusted to him. (California Warehouse Act, Stats. 1909, chap. 290, sec. 21; 25 Cal. Jur., p. 957, sec. 16; 27 R. C. L. 992, sec. 51; 6 C. J. 1121, sec. 61; 3 R. C. L. 96, sec. 23; *Runkle* v. *Southern Pac. Milling Co.*, 184 Cal. 714 [16 A. L. R. 275, 195 Pac. 398]; *Webber* v. *Bank of Tracy*, 66 Cal. App. 29, 33 [225 Pac. 41]; *Firestone Tire & Rubber Co.* v. *Pacific Transfer Co.*, 120 Wash. 665 [26 A. L. R. 217, and note, 208 Pac. 55].) ■ Mere evidence of the theft of goods left in the custody of a bailee, even though they were stolen by his servant or employee, is insufficient to charge him with negligence and liability for their loss, and the burden is upon the owner to supply evidence from which it may be reasonably inferred that the bailee was guilty of negligence either in the employment of his servants or the management of his business, which negligence proximately contributed to the loss of the goods. (27 R. C. L. 993, sec. 51; 40 Cyc. 472, sec. 6; *Firestone Tire &*

*Rubber Co.* v. *Pacific Transfer Co.,* 120 Wash. 665 [26 A. L. R. 217, 208 Pac. 58] ; *Exporters' & Traders' C. & W. Co.* v. *Schulze* (Tex. Com. App.), 265 S. W. 133; *Balice* v. *Erie Ry. Co.,* 208 App. Div. 427 [203 N. Y. Supp. 636].)

Where, however, the owner of the goods has proved a *prima facie* case of negligence against the warehouseman, the burden is not on the bailor to establish the fact that the bailee failed to operate his business according to the usual custom of warehousemen. In order that an owner may recover damages from a bailee for hire for the theft of his goods, it is necessary that the bailor should sustain the burden of showing acts, conduct, or omissions on the part of the warehouseman amounting to a lack of ordinary care of the property left in his custody, but this burden does not require the bailor to affirmatively prove the usual custom among warehousemen with relation to the operation of their business, as this is a matter of defense, the burden of which rests upon the bailee. (*Runkle* v. *Southern Pac. Milling Co.,* 184 Cal. 714, 721 [16 A. L. R. 275, 195 Pac. 398].)

In 27 Ruling Case Law, 992, it is said ''A warehouseman is bound to exercise reasonable care to avoid the theft of the stored goods. . . . Such a company is required to use that degree of care in the safekeeping of property which is demanded from a bailee in the keeping of valuable property. He must use such care in the protection of the property from thieves without and thieves within, in the selection of its employees, and in the supervision of their conduct.'' (*Cussen* v. *Southern California Savings Bank,* 133 Cal. 534 [85 Am. St. Rep. 221, 65 Pac. 1099].) In the case last cited it.was held that a bank was liable to the owner for a theft of valuable articles taken from a safe-deposit box, where it was shown that one of the duplicate keys to the box was left accessible to the employees of the bank, and where the vault had been placed in the custody of a seventeen year old lad employed without previous inquiry as to his honesty, and who was paid but $30 per month for his services, and remained in the service of the bank but three months. In sustaining a verdict of a jury in that case, it was said: ''The jury might well say that proper care was not exercised in the selection or rejection of this employee.'' In that case Justice Garoutte quoted with approval from

the case of *Preston* v. *Prather,* 137 U. S. 604 [34 L. Ed. 788, 11 Sup. Ct. Rep. 162, see, also, Rose's U. S. Notes], as follows: ''Persons, therefore, depositing valuable articles with them expect that such measures will be taken as will ordinarily secure the property from burglars outside and from thieves within, . . . and also that they will employ fit men, both in ability and integrity, for the discharge of their duties, and remove those employed whenever found wanting in either of these particulars. An omission of such measure would in most cases be deemed culpable negligence, so gross as to amount to a breach of good faith, and constitute a fraud upon the depositor.''

It will thus be seen that a bailee for hire, who conducts a regular business of storing goods for hire, must exercise due diligence and ordinary care commensurate with the value of the goods stored and the circumstances of the case, to protect the bailor's property from damage or theft from both without and within the warehouse. He must provide buildings, storage apartments and facilities for locking the doors and windows adequate to safeguard the goods with ordinary care against the depredations of thieves, and he must exercise due care in the employment and retaining of men about the storehouse, of known honesty and ability.

In the present case it may be inferred from the verdict that the jury of necessity found not only that the plaintiff's goods were stolen, but that the defendant was guilty of negligence in the hiring and retaining of employees and the conduct of his warehouse business which proximately contributed to the theft. These findings are supported by substantial evidence. Among the goods which were stored and stolen were seven cases of liquor. The defendant had previously lost by theft other consignments of liquor. It had been warned that a certain employee who worked about the storehouse was a bootlegger, which charge imputed dishonesty to the employee. The president of the corporation defendant was suspicious of this employee, and hired a detective to watch him, yet he was not discharged. The plaintiff's goods were stored in a separate room apart from all other goods, and the door to this room was securely locked. There was no occasion for any employee to visit this room or to have access thereto during the absence of

the plaintiff, yet master keys, which fitted all the rooms of this warehouse, were supplied to several employees. When these keys became worn so that they would operate in the locks with difficulty, new ones were replaced and the old ones were carelessly thrown into a waste-basket or in the debris, where they were accessible to the employees or loafers about the place. We are of the opinion that this evidence furnishes substantial proof of negligence. ▮ In actions involving the negligence of a warehouseman, the usual rule applies with respect to what constitutes ordinary diligence for the protection of the owner's goods, and where there is substantial evidence in this regard to support the verdict of a jury, its findings will not be disturbed on appeal. (27 R. C. L. 1004, sec. 65; 40 Cyc. 482, sec. 8; *Garrette* v. *Grangers' Business Assn.,* 58 Cal. App. 396 [208 Pac. 1010].)

The case of *Firestone Tire & Rubber Co.* v. *Pacific Transfer Co., supra,* is relied upon by appellant in support of its contention that the evidence in the present case does not uphold the findings of negligence on its part. The facts of that case, however, were radically different from those of the present case. The record discloses the fact that plaintiff rented a space in the defendant's warehouse, in which to store a large quantity of automobile tires. This space was inclosed with a lattice partition which extended only within three feet of the ceiling, thus leaving an aperture over which one could easily climb. The plaintiff was furnished keys to this inclosure and to the warehouse, and always had free access to both. It was not assumed by the parties that this inclosure was burglar-proof. It was constructed and maintained as a mere convenience by means of which to keep plaintiff's tires separate from other goods which were stored in the warehouse. No goods had been previously stolen from the warehouse, and there was neither suspicion on the part of the defendant nor warning received regarding the dishonesty of its employees. Two of the defendant's servants did, however, steal the tires. The evidence was deemed to be insufficient to uphold a finding of negligence on the part of the defendant. The foregoing recital of facts readily distinguishes that case from the present one without the neces-

sity of comment. It is therefore not authority for the reversal of this case.

The appellant claims that the damages for loss of the goods in question was limited by contract to the sum of $25 per package. It is true that when the first 57 packages were received and listed a duplicate warehouse receipt signed by respondent was given to him, and contained the following provision: "It is agreed that said goods shall be stored at owner's risk of damage by moth, vermin, rust, fire, heat, leakage, or injury to fragile articles that are not packed. . . . The responsibility of this warehouse for any piece or package, or its contents, is limited to the sum of $25, unless the value thereof is made known at the time of the storing, and receipted for in the schedule, and an additional charge made for the higher valuation. . . . "

In the absence of negligence on the part of a bailee, the owner of goods who signs a warehouse receipt for their custody, will ordinarily be bound by the express terms and conditions of his contract. (25 Cal. Jur. 962, sec. 18; 27 R. C. L. 997, sec. 57; *Taussig* v. *Bode*, 134 Cal. 260 [86 Am. St. Rep. 250, 54 L. R. A. 774, 66 Pac. 259]; *McMullin* v. *Lyon Fireproof Storage Co.*, 74 Cal. App. 87, 95 [239 Pac. 422]; *Cunningham* v. *International Com. of Y. M. C. A.*, 51 Cal. App. 487 [197 Pac. 140]; *Wilson* v. *Transfer & Storage Co.*, 201 Cal. 701 [258 Pac. 596].) But a warehouseman may not limit his liability for damage or loss of goods stored with him for hire, so as to exempt himself from damages resulting from his own negligence, nor to relieve himself from the exercise of ordinary care. The trend of modern authorities holds that such an effort on the part of a bailee to exempt himself from negligence is contrary to public policy. (*Dieterle* v. *Bekin*, 143 Cal. 683, 688 [77 Pac. 664]; *Northwestern M. F. Assn.* v. *Pacific W. & S. Co.*, 187 Cal. 38, 41 [200 Pac. 934]; *Taussig* v. *Bode, supra; Morse* v. *Imperial Grain & Warehouse Co.*, 40 Cal. App. 574 [181 Pac. 815]; *Langford* v. *Nevin*, 117 Tex. 130 [298 S. W. 536]; *Carley* v. *Offutt*, 136 Ky. 212 [136 Am. St. Rep. 207, 248, note, 26 L. R. A. (N. S.) 1114, 124 S. W. 280]; 40 Cyc. 437; 27 R. C. L. 997, sec. 57.)

Section 21 of the California Warehouse Act (Stats. 1909, p. 437), provides: "A warehouseman shall be liable for

any loss or injury to the goods caused by his failure to exercise such care in regard to them as a reasonably careful owner of similar goods would exercise.'' From the verdict in the present case it must be presumed that the jury found the appellant guilty of negligence which proximately resulted in the loss of the goods by theft. There is substantial evidence to support this finding, and the contract designed to limit appellant's liability to $25 per package is therefore unavailing in that regard. Section 1840 of the Civil Code, however, provides: ''The liability of a depositary for negligence cannot exceed the amount which he is informed by the depositor, or has reason to suppose the thing deposited, to be worth.'' Upon rehearing of the present case we are convinced that the record indicates clearly that the respondent failed to disclose to the bailee at the time of depositing his goods for storage, either the value or character of the contents of the three boxes involved in this suit, except the liquor therein contained, which upon the trial was stipulated to be worth $400. It appears that upon delivery of the first consignment of goods for storage the appellant refused to accept the liquor for the reason that it was not properly crated and because the respondent held no government permit to move the liquor. It was therefore taken away and subsequently returned crated with the art goods heretofore mentioned and accompanied with a proper permit for removal. The respondent testified in this regard: ''Q. You didn't tell anybody what was in those three boxes, did you? A. It wasn't necessary; they knew, . . . the foreman and the men that were—'' The court, interrupting, said: ''He asked you a question. A. Yes, I did. Q. Whom did you tell? A. I think it was the foreman. . . . Q. That was when you brought the three boxes in? A. Yes, I did as he suggested—I packed these cases and these boxes. . . . Q. But did you tell him when you came back, that you had packed these cases in these boxes? A. Yes. Q. You did? A. Yes, sir; I told him the same goods only boxed up. . . . Q. You don't know what position this man occupied with the company. . . . A. I judged at the time and have always been under the impression that he was the foreman; he seemed to have authority. Q. Now, just what did you say to him? A. Well, I brought back those

goods, boxed up as he advised me. Q. You didn't tell him what there was in those boxes except whiskey? A. No, I did not. Q. You didn't tell anybody about the value (of what) you said was in those boxes? A. No, sir, I did not. . . . Q. You did not indicate by marks on the outside, that they contained treasure articles? A. No. . . . Q. Did any of the employees ask you what was in those boxes? A. Yes— no, they asked me if I had a license to move what was in them. . . . I told them I had sent to San Francisco to procure the license; I took it out and showed it to them; I told them I had sent for it because they suggested my doing so. . . . Q. Now, other than the conversation about whiskey, at the time that you made the original deposit of the goods, was there any inquiry made by the defendant or any of its employees there, as to the character or the value of the goods you were then depositing? A. No.'' ▉ It is apparent from the foregoing testimony that the appellant knew that these crates contained the liquor. He had frequently had liquor stored with him before, and had ample reason to know of its approximate value. At the trial it was stipulated to be worth $400. To this extent, at least, the appellant was bound to recompense the owner for the loss through its negligence. ▉ Concerning the contents of these boxes, other than the liquor, the evidence fails to show that the appellant had either knowledge of their identity or value. While the evidence does show that the respondent at first replied in response to the question: ''You didn't tell anybody what was in those boxes, did you? A. It wasn't necessary, they knew. The Court: He asked you a question? A. Yes (I did tell them),'' had reference only to the liquor contained in the boxes. From a fair construction of the testimony it must be conceded that the entire conversation was regarding the liquor, and that the remaining contents of these boxes were not disclosed. For this reason the limitation of liability fixed by section 1840 of the Civil Code should prevail, and the judgment must therefore be reduced to the amount of the stipulated value of the liquor, plus the additional sum of $25 for each of the three boxes in question.

▉ Finally, the appellant assigns as error the giving and refusing of certain instructions by the court. Defend-

ant's instruction number 17, which was refused, charged the jury that " . . . An employer is presumed to have exercised due care in the choice of his employees, and the burden of proof is on the plaintiff to show that the defendant failed to exercise such care, and the mere fact that an employee may prove to be dishonest is no evidence of negligence on the part of the employer, or of failure to exercise due care in the choice of such employee." The refusal of this instruction was not error, since it was fully covered by other instructions which were given. The court charged the jury that a bailee for hire was not an insurer of the safety of property entrusted to him, but was required to use only ordinary care to protect it from damage or loss, such as a prudent man would exercise for the preservation of his own property. And the jury was further instructed that the defendant "was required to use such (ordinary) care in the selection of its employees and in the supervision of their conduct after they were employed." And further, that "if it is established that the property was stolen . . . by the servants of the bailee, . . . it is then incumbent upon the bailor to introduce evidence from which the jury might legitimately infer that the loss or theft was due to lack of ordinary care on the part of the bailee." And also that, "the burden . . . is on the plaintiff to show that the defendant failed to exercise due care in the choice of its employees, and the mere fact that an employee may prove to be dishonest, is no evidence of neglect on the part of the employer, or of failure to exercise due care in the choice of such employee." These and other instructions along this line, fully advised the jury that the burden was upon the plaintiff to prove the negligence of the defendant in the employment of dishonest servants, before it could be held liable on that score.

The court also refused to give defendant's instructions numbered 2–D, 13, 13–A, and 15, to the effect that by delivering to respondent the duplicate warehouse receipt upon which was listed the first delivery of packages numbered from 1 to 57, inclusive, together with the printed notice of a $25 limitation of liability thereto attached, that he acquiesced in such limitation of value as to all subsequent boxes delivered, for the reason that all the goods were

stored in the same room, and the plaintiff failed to disclose to the defendant the actual value of the property. The refusal to so instruct the jury was not error. These instructions were erroneous for the reason that they omitted the element of negligence and sought to limit the liability to $25 per package, regardless of the exercise of reasonable care on the part of the bailee. These instructions were also argumentative and invaded the province of the jury, which had the exclusive right to determine whether it was the intent of the parties that this contract, attempting to limit the liability of the bailee, should apply to the second consignment of goods, for the storing of which no receipt was issued or delivered.

The jury were specifically instructed, in the language of section 1840 of the Civil Code, that the amount of damages recoverable for the loss of goods through the negligence of a bailee, was limited to the value thereof as disclosed by the owner, unless the bailee had reason to otherwise know of its value. The jury were also fully instructed that the right to recover depended entirely upon proof of the negligence of the bailee.

The court correctly instructed the jury that: "The defendant cannot limit its liability against its own negligence by contract, and any contract to that effect would be void." Moreover, the jury was fully, fairly and correctly instructed regarding the measure of damages for the loss of goods resulting from the negligence of a bailee, as follows: "It is an express provision of the law that the liability of a depositary for negligence cannot exceed the amount which he is informed by the depositor, or has reason to suppose the thing deposited to be worth." (Sec. 1840, Civ. Code.) And, further, that: "If you believe from the evidence that the plaintiff did not inform the defendant of the value of the contents of the boxes in question, its liability cannot exceed the amount which it had reason to suppose the contents of the boxes to be worth." The jury was also further instructed that: "If you believe from the evidence that the plaintiff did inform the defendant that said boxes contained whiskey, but did not inform the defendant that they contained any other valuable articles, and that the defendant did not have reason to suppose that they contained

other valuable articles, then, even if you find the defendant was negligent, nevertheless, the liability cannot exceed the value of the whiskey which was stipulated to be $400.''

For the foregoing reasons the judgment is modified to allow damages only for the loss of the stipulated value of the liquor, plus the added liability of $25 per package limited by the provisions of section 1840 of the Civil Code, aggregating the sum of $475. As so modified, the judgment is affirmed. The appellant will recover its costs.

Hart, Acting P. J., and Plummer, J., concurred.