**LUMBERMAN'S MUTUAL INSURANCE COMPANY, Plaintiff-Appellee, v. F. Z. CIKRA, INC., Defendant-Appellant.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 21627.   Decided April 10, 1950.

Klein & Diehm, Cleveland, for plaintiff-appellee.

McKeehan, Merrick, Arter & Stewart, Cleveland, for defendant-appellant.

**OPINION**

By McNAMEE, J:

This appeal of defendant appellant challenges the correctness of the judgment of the Common Pleas Court awarding damages to plaintiff in the sum of $2,000.00 and rests upon the claim that pursuant to the terms of a purported limitation of liability clause in the bailment contract plaintiff is entitled to judgment not to exceed $100.00.

This action was brought by plaintiff as subrogee of Olive L. Trebing, its assured, to recover the value of a fur coat that was lost or stolen while in the possession of defendant.

The salient facts are:—In the Spring of 1945, Olive L. Trebing had her mink coat remodeled extensively by defendant at a cost to her of more than $600.00. On completion of this work Mrs. Trebing stored the coat with defendant for the summer. In the early Winter of 1945, she obtained the coat from defendant. For several years Mrs. Trebing had carried insurance on her coat with Lumberman's Mutual Insurance Company. At the time of its withdrawal from storage in 1945, she requested defendant to re-appraise the coat for insurance purposes. This was done and defendant placed a value thereon of $2,000.00 for which amount Mrs. Trebing reinsured the coat with plaintiff. Thereafter Mrs. Trebing complained to defendant about the fit of the coat around the shoulders. Defendant agreed to make the necessary alterations but suggested that this work be deferred until the coat was brought in for storage the following Spring.

On March 27, 1946, Mrs. Trebing delivered her coat to defendant for the purpose of obtaining the desired alterations and to arrange for its storage until the late Fall or early Winter of that year. On this occasion or a few days later H. J. Cikra made certain preliminary adjustments to the coat by means of pins and then discussed the matter of storage with Mrs. Trebing. Knowing that Mrs. Trebing had insured the coat for $2,000.00 with plaintiff, Cikra suggested that she avoid further insurance expense and place a minimum valuation of $100.00 on the coat for storage purposes at a cost of $2.00. To this Mrs. Trebing agreed. A few days thereafter defendant mailed to Mrs. Trebing a storage receipt which contained a brief description of the coat and specified the

owner's valuation at $100.00. In addition the following pertinent terms were embodied in the receipt:

"FUR STORAGE RECEIPT AGAINST FIRE, MOTH
AND ALL OTHER LOSS OR DAMAGE
(except Action of Time)

Subject to the following terms and conditions:

1. The liability for loss or damage shall in no event exceed the valuations specified.  * * *."

At the time of the delivery of the coat to defendant in 1946, the work room located on the second floor of defendant's establishment, was being redecorated. This necessitated a delay in the performance of the work of altering the coat. During this period of delay the coat was placed in one of the vaults maintained by defendant in the basement of the store. When the redecoration of the work room was completed the coat was taken from the vault in the basement to the second floor and the alterations made. The coat was then placed upon a dumb waiter connecting the work room on the second floor with the storage vault in the basement. It was not seen thereafter by any responsible person connected with defendant company.

In November, 1946, Mrs. Trebing requested the withdrawal of her coat from storage. Being unable immediately to find the coat, defendant requested and obtained additional time to search all of its storage vaults. However, all efforts to find the coat were fruitless. Thereafter Mrs. Trebing notified plaintiff of her loss. On January 31, 1947, plaintiff paid her claim of $2,000.00 in full and took a subrogation receipt in exchange. As subrogee plaintiff then instituted suit against defendant to recover the sum of $2,000.00 paid its insured.

Plaintiff's claims are three folds: (a) that defendant converted the coat; (b) that the coat was never placed in storage thereby rendering the limitation of liability clause inapplicable and (c) that there were two separate contracts between the assured and the defendant—one for alteration of the coat— and a separate contract for storage.

Asserting that the coat was lost through defendant's negligence while performing the contract for alteration, plaintiff contends that by reason thereof, the limitation of liability clause in the bailment contract had no application. This latter view was adopted by the trial judge who entered judgment for plaintiff for the full amount of the loss.

The plaintiff did not make out a case of conversion by the defendant. It is a fair inference from the evidence that the

coat probably was stolen by an employee or business visitor of the defendant, but there is a complete absence of evidence tending to show defendant's involvement in any wilful wrongdoing or any conduct on its part amounting to a conversion of the property. In adopting the view that the limitation of liability had no application for the reason that the coat was lost during the performance of a separate contract for its alteration, the trial court relied upon dicta in the opinion of this court in **Aetna Casualty and Surety Company v. Higbee Company, 80 Oh Ap 437.** It was held in that case that the terms of the contract limiting liability did not apply because of the bailee's conversion in delivering the coat to a third person without the express or implied consent of the bailor. There was no express holding that two separate contracts were executed. Upon this subject the court expressed the view that there was evidence tending to establish a subsequent and separate contract for repairs.

In considering the effect of such separate contract, the court said:

"It seems, therefore, if it be established that the contract for repairs was separate and distinct from the storage contract, that the limitation of liability had no application to such contract for repairs."

The foregoing statement must be considered in the light of the following language appearing in the concluding portion of the opinion:

"On the other hand, if the right to accomplish the cleaning of the fur coat by a subcontractor was within the terms of the contract, then such provision as to limitation of liability would apply."

In the instant case, there was a bailment contemplating that defendant would alter the fit of the coat while it was in its possession as bailee. "Whether a bailment for which the bailee is paid involves the performance of work upon the chattel or merely storage of it the fundamental principles are the same unless the bailment is to an innkeeper or common carrier." Williston on Contracts, Vol. 4, Page 29-21, Sec. 1045.

Whether there were two separate contracts, it is unnecessary to inquire. If there were, the evidence is clear that the contract for alterations had been completed and the coat placed upon the dumb waiter for return to storage in the basement whence it had been withdrawn. It is to be remembered that the storage charges were fixed at the minimum

fee of $2.00 and the valuation specified as being $100.00 for the reason that the bailor was fully protected against loss by the insurance which she carried on the coat. She was as fully protected against loss while the coat was being altered in the work shop of defendant as when it was in one of defendant's storage vaults. It does violence to the agreement of the parties to suppose that in these circumstances they intended the limitation of liability clause to be effective if loss of the coat occurred while it was in one part of the bailee's store, but that such limitation was not to be applicable if the loss occurred in another part of the bailee's premises. Appellee contends that the finding of the trial court that the loss of the coat occurred while the contract for its alteration was being performed, cannot be disturbed because of the absence of any assignment of error that this finding is against the weight of the evidence. This argument is without merit. There is a complete lack of evidence to support such finding. As noted above, the coat was last seen **after** the alteration was completed. It was then on the dumb waiter and on its way to storage. Precisely when it was lost, or how, are matters solely within the realm of conjecture. The controlling fact is that the defendant breached its bailment contract by failing to deliver the coat upon demand or to submit any satisfactory explanation for such failure.

It is a fair inference from all the evidence that the coat was lost through the negligence of defendant. The crucial question to be determined is whether the limitation of liability clause in the bailment contract is efficacious to limit the bailee's liability for its own negligence to the specified valuation of $100.00. Whether a bailee may limit his liability for negligence is a subject upon which courts have expressed a variety of divergent and conflicting views. However, the authorities are uniform in holding that the common law duties of a bailee may be modified by special contract. There is no disagreement on the proposition that by special contract the common law duty to exercise ordinary care may be enlarged, to impose upon the bailee the obligation of an insurer. This is the rule in Ohio, **5 O. Jur. 113, Sec. 21; Triangle Film Co. v. Saks, 7 Oh Ap 458; Savin v. Butler, 111 Oh St 695.** See also, 6 Am. Jur. 276, Sec. 181.

But, where it is sought by special contract to limit the liability of a bailee for loss occasioned by his negligence to an amount less than the true value of the bailed property, the courts scrutinized the transaction with a critical eye to determine whether such an agreement contravenes public policy.

In **Agricultural Insurance Company v. Constantine, 144 Oh St 275-283,** the Supreme Court declared invalid printed conditions on a parking ticket that were broad enough to exculpate the bailee ·for any wanton or wilful misconduct of the bailee, his agents or servants and cited with approval the general rule stated in 6 Am. Jur. 270, Sec. 176 as follows:

"It is now apparently well settled that a bailee for hire cannot, by contract, exempt himself from liability for his own negligence or that of his agents or servants (Franklin v. Southern Pacific Co., 203 Cal., 680, 265 P., 936, 59 A. L. R., 118; **Hotels Statler Co., Inc., v. Safier, 103 Oh St, 638,** 134 N. E. 460, 22 A. L. R., 1190; Scott Auto & Supply Co. v. McQueen, 111 Okla., 107,. 226 F., 372, 34 A. L. R. 162; Simms v. Sullivan, 100 Ore. 487, 198 F., 240, 15 A. L. R., 678; Sporsem v. First National Bank of Poulsbo, 133 Wash., 199, 233 P., 641, 40 A. L. R., 854). Contracts limiting liability for negligence in bailments for hire in the course of a general dealing with the public are generally regarded as against public policy. Union Pacific Rd. Co., v. Burke, 255 U. S., 317, 65 L. Ed., 656, 41 S. Ct., 283; England v. Lyon Fireproof Storage Co., 94 Cal. App., 562, 271 P., 532, Denver Union Terminal Ry. Co. v. Culliman, supra."

It is to be noted that the foregoing rule against limitation of liability for negligence is confined to those "bailments for hire in the course of a general dealing with the public." Ordinarily, such bailments involve those whose principal business is that of bailees and who deal with the public on a uniform basis as evidenced by conditions printed on tokens, receipts or signs posted in places of business. Included in this category are owners of parcel check rooms, parking lot operators, garage men and public warehouse men. See 175 A. L. R. 111-112. It is considered that between these professional bailees and those who deal with them there exists a disparity of bargaining power that tends to compel acceptance by the bailor of the terms stipulated by the bailee. The necessity of being required to deal with such a bailee, or not at all, is a factor frequently determinative of the lack of equality of bargaining power between the bailor and bailee.

Bailment contracts with professional bailees of the class herein above noted are affected with a public interest and there is full warrant for a judicial inquiry whether public policy is violated by the terms and stipulations thereof. Contracts are deemed to be contrary to public policy because of their "mischievous tendency as regards the public." In

9 O. Jur. 347, Sec. 132, it is declared—"To be against public policy a contract must contravene public right or the public welfare." But, where the storage of goods is merely incidental or auxiliary to the principal business of bailees, considerations of public policy do not apply. Ordinarily, in contracts with this latter class of bailees, equality of bargaining power exists and bailors may act, free of the pressures of compulsion of necessity. Where the parties stand on equal footing and no public interest is effected, the validity of bailment contracts is to be determined by those considerations that apply in all private contracts between individuals or corporations. This is the basis of the rule that permits an ordinary non-professional bailee to limit his liability for negligence provided the terms of the contract are fully understood and freely consented to by the bailor.

The dictum in **Hotels Statler v. Safier, 103 Oh St 638-646,** is not in conflict with this rule. In that case the court said:

"Ordinarily in bailments the parties may diminish the liability of the bailee by special contract, provided the contract is not in violation of law or of public policy and does not relieve the bailee of negligence. (6 Corpus Juris, 1112.)"

A fair construction of the foregoing statement warrants the conclusion that the court merely stated the rule that prohibits a special contract exempting the bailee from the duty of exercising ordinary care. Confirmation of the correctness of this view is implicit in the language of the opinion immediately following that above quoted where the court said:

"But in the instant case no such special contract was made, and in the absence of a special agreement the law of bailments fixes the degree of the bailee's liability."

In the Statler Hotel case the liability of the bailee rested upon its failure to exercise due care. Accordingly the statement in the court's opinion that **"in the absence of a special agreement"** damages were to be determined by the law of bailments, implies fairly that if a special contract limiting liability had been made it would have been given effect.

Excluding those cases in which questions of notice and consent are involved, there is no case in this state to which our attention has been directed that has not upheld the validity of terms in a bailment contract limiting the liability of the bailee to a specified amount. See **Pickering v. Warehouse Co., 114 Oh St 76; Laurens v. Jenney, 77 Oh Ap 291.**

In other cases where courts refused to give effect to terms of a contract limiting the liability of a bailee because the evidence disclosed that the loss was due to the bailee's conversion there is nevertheless a clearly implied recognition of the validity of the terms of a special contract limiting liability for loss occasioned by negligence of the bailee. See **Higbee Co. v. Casualty Co., 80 Oh Ap 437; Conkle v. G. K. Scott Co., 147 Oh St 487.**

The first paragraph of the syllabus of the Pickering case reads:

"Terms and conditions in a warehouse receipt and contract, which limit the responsibility of the warehouseman for any article or package listed on such receipt while in such warehouse or being carted to or from the same by it to the sum of $25.00, unless the value thereof is made known at the time of storing, noted on such receipt, and the payment of a higher storage rate therefor, do not constitute an exemption from liability for want of due care, but constitute a reasonable and enforceable method of fixing a due proportion between the amount for which the warehouseman becomes responsible and the charges collected by him, and for protecting the warehouseman against extravagant valuations in case of loss."

In the Pickering case the warehouseman had no knowledge of the true value of the goods at the time the bailment contract was executed. In that respect the Pickering case is distinguishable on the facts from the case here under review where the bailee at the time of the storage of the coat had knowledge of its true value. There is authority in other jurisdictions holding such knowledge to be an invalidating factor of bailment contracts that limit the liability of the bailees to an amount less than the true value of the property. See Wilson v. Crown Transfer & Storage Co., 201 Cal. 701-258 Pac. 596; England v. Lyon Fireproof Storage, 94 Cal. App. 562. But, these cases involve bailments with professional and public bailees.

It is sometimes asserted that the limitation of a bailee's liability for a loss to an amount less than the true value of the property is an inducement to carelessness on the part of the bailee and that such a limitation tends to weaken the bailee's sense of obligation to perform the common law duty to exercise ordinary care. Such considerations are not without merit particularly in those cases affected with a public interest. However, in private contracts of ordinary bailment, such considerations are more than counter-balanced

by the competitive pressures of business which militate against the violation of duties imposed by law for the protection of the bailor's property.

The matter is persuasively stated in 86 U. of P. Law Review 777, as follows:

"Liability, resulting in money damages, is certainly not the only deterrent to negligence on the part of bailees. A more important factor encouraging due care on the part of bailees will be found in the pressure of daily competitive business. It seems unlikely that contemporary business men would take advantage of the immunity clause by careless treatment of their customers' property. Moreover, whatever tendency to harm the public lurks in the recesses of such provisions must be balanced against a strong public attitude favoring freedom of contract."

In the case under review, the parties to the bailment contract had a full and complete understanding of the precise terms thereof. The terms of the contract were fair—the storage charge of $2.00 was fairly proportional to the specified valuation and no public interest was involved. In these circumstances it would be an unwarranted and officious interference with the principle of "freedom of contract" to hold the limitation of liability clause invalid. Courts have no right to make contracts for the parties, neither do they have the right to invalidate agreements fairly and openly arrived at unless they violate positive law or contravene the established and plainly recognizable principles of public policy.

For the foregoing reasons the judgment of the Common Pleas Court is modified and final judgment rendered for plaintiff against defendant in the sum of $100.00. As thus modified, the judgment is affirmed.

SKEEL, PJ, concurs.
HURD, J, dissents.

HURD, J. dissents.

I respectfully dissent from the majority opinion because upon a review of the evidence as disclosed by the bill of exceptions, it appears to me that this case turns primarily on a question of fact. The trial court found as indicated by its opinion that these were two separate contracts. I think that this finding is in accord with the evidence and certainly not contrary to the manifest weight of the evidence. As it appears to me there were here two separate

contracts in respect of the bailment of the garment in question; one for repairs (Locatio rei operis fociende) and the other for storage only (Locatio rei Custodiae). In respect of the bailment for storage there was a contract limiting liability, while in respect of the bailment for repairs there was no such contract. The garment was lost before it ever reached the place of storage, so that the contract limiting liability for negligence has no application. That the limitation of liability related to storage only is indicated by the title of the storage receipt, viz.:

> "FUR STORAGE RECEIPT AGAINST FIRE, MOTH
> AND ALL OTHER LOSS OR DAMAGE
> (Except Action of Time)"

On the admission of the defendant as appears in the record, it was not the custom or practice of the defendant to issue a storage policy limiting liability when a garment was delivered for the purpose or repair or alteration, and none was issued covering the repairs or alteration in this case.

It clearly appears from the record that the contract for remodeling had its inception in the Spring of 1945 when defendant company undertook to remodel the coat at a cost to the owner of over six hundred dollars. At that time it was agreed that remodeling had not been done to the satisfaction of the owner and that to complete the job satisfactorily it would be necessary to alter the garment to fit properly around the shoulders. It was then agreed that the coat would be taken out for wear during the winter and returned in the Spring to complete the repairs and for cold storage during the summer season. Accordingly, the coat was brought in during the month of March, 1946 for two purposes: (1) to complete the repair in accordance with the agreement for which payment had already been made; and (2) for cold storage after the repair was completed.

The record shows that at the time of the delivery of the coat to the bailee in 1946, the work room on the second floor of bailee's place of business was being redecorated and that the coat was temporarily placed in a downstairs vault pending completion of the work of redecorating. It was then that the coat was taken from the vault in the basement to the work shop on the second floor for the purpose of completing the remodeling and repairs of the coat in accordance with the agreement of the parties previously made as indicated hereinabove.

The record further shows that when the repairs were completed the coat was placed on the dumb waiter at the work

room level for transport to a different building, namely the Sheriff Street Market House, there to be placed in cold storage. As stated by the trial court, the trail of the coat stopped at this point. Consequently, it was never given a "rod number" and never reached cold storage.

The trial court found that it was in the performance of this contract for remodeling and repairs that the loss of the garment occurred and that, therefore, the contract of limitation of liability for storage had no application.

The evidence indicated that the defendant bailee in connection with its business of selling and repairing fur also engaged in the storage of furs for hire, hence we have here the two classes of bailment hereinbefore described.

In the case of **Aetna Casualty & Surety Co. v. Higbee Co. 80 Oh Ap 437,** this court had before it a factual situation somewhat analogous to the facts in the instant case. While the syllabus of that case deals primarily with the proposition of conversion, yet the issue of separate contract appears in that case as is shown by the language of Skeel, J, speaking for a unanimous court, commencing at page 445 as follows:

"One other consideration must be given to the facts as applicable to the limitation of liability contained in the storage contract between The Higbee Co. and Mrs. Goldsmith. The storage contract was concluded on May 16, 1944, the coat having been delivered to defendant on May 2, 1944. The contract of storage of May 16, 1944 wherein defendant agreed to store the coat for $2.00 contained the limitation of liability of $100.00 for each article stored. Subsequent to the date of this contract, to-wit, Aug. 30, 1944, for the consideration not to exceed $26.00, The Higbee Company agreed to make certain repairs and to clean the coat, which charge was to be in addition 'to sales tax and the regular storage charge'. **The evidence therefore tends to establish that the contract for repairs was a new contract entered into entirely independent of the contract for storage.** It was in the performance of this contract that The Higbee Company delivered the coat to The New Process Fur Cleaning Company from whose possession it was stolen. **It seems therefore if it be established that the contract for repairs was separate and distinct from the storage contract, that the limitation of liability had no application to such contract for repairs."**

As stated in this case the trial court found that the contract for repairs was separate and distinct from the storage

contract and that the limitation of liability had no application to the contract for repairs. Inasmuch as the trial court also found, very properly it seems to me, under the evidence, that the loss did not occur under the contract or bailment of storage but under the contract for alterations and repairs, I cannot conclude that this finding was contrary to the manifest weight of the evidence. It is therefore my view that the judgment should be affirmed.